ELSIE ANNETTE BOUDAKIAN, administratrix, *vs.* TOWN OF WESTPORT.

Bristol. February 6, 1962. — April 3, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Probate Court,* Appeal. *Executor and Administrator,* Debts, Claim for old age assistance, Claim for decedent's death, Claim for decedent's conscious suffering. *Death. Damages,* For death, For conscious suffering.

A judge of a Probate Court had no authority to dismiss a perfected appeal under G. L. c. 215, § 9, on the ground that the appellant was not a person aggrieved by the decree appealed from; the determination of that question was for this court. [63]

A town which had paid old age benefits to a decedent and brought an authorized action against her administratrix for reimbursement under G. L. c. 118A, § 4A, as amended, was a creditor of the decedent's estate and was a "person aggrieved" entitled to appeal under c. 215, § 9, from a Probate Court decree allowing the account of the administratrix. [63–64]

An appeal lay from an order of a Probate Court dismissing an appeal from a decree under G. L. c. 215, § 9, on the ground that the appellant was not a "person aggrieved" entitled to appeal from the decree. [63–64]

In a proceeding in a Probate Court on the account of an administratrix, evidence of the circumstances in which the decedent, an elderly woman, was struck while attempting to cross a street one clear morning by an

automobile which had proceeded through a red traffic light and was traveling at a speed of twenty-five to thirty miles per hour, and evidence of brain and other injuries which she sustained and of conscious suffering on her part from the day of the accident until her death twenty-five days later, disclosed no error in the allocation made by the judge, as between conscious suffering and death, of a lump sum received by the administratrix in a settlement with the operator of the automobile. [64–65]

PETITION, filed in the Probate Court for the county of Bristol on March 1, 1961, for allowance of the account of the administratrix of the estate of Elizabeth Westman.

A decree allowing the account was entered by *Considine,* J. The respondent town appealed. A motion by the petitioner to dismiss the appeal was allowed by the judge, and the respondent appealed from such dismissal.

*Solomon Rosenberg, (George H. Young* with him,) for the respondent.

*John J. Harrington,* for the petitioner.

SPALDING, J. On June 2, 1958, Elizabeth Westman, a resident of Westport, was struck by an automobile as she was crossing Route 6 in North Westport. As a result of the injuries sustained in the accident, she died on June 27. At the time of her death she was seventy-seven. Elsie Annette Boudakian, her daughter, was appointed administratrix of the estate on July 16, 1958. She and her brother, C. J. Westman, are the only heirs. The administratrix instituted an action of tort against the driver of the automobile, with one count for conscious suffering, and another count for wrongful death. The case was settled out of court for a lump sum of $12,000. In filing her final account, the administratrix allocated $3,500 of this sum to the claim for conscious suffering, and the remainder, $8,500, to the wrongful death claim.

The town of Westport had paid old age benefits to the decedent in the amount of $4,659.45 and a portion ($530.75) of her hospital bill. The town brought an action against the decedent's estate for reimbursement under G. L. c. 118A, § 4A, as amended through St. 1951, c. 801, § 5. According to the account filed by the administratrix, the estate had only $4,393.98 in assets, $3,500 of which was derived from

the allocation for conscious suffering in the tort case. Under the submitted account, the town would get nothing. The town makes the following objections to the administratrix's account: the amount allocated for conscious suffering was "arbitrary and inadequate"; the item of $1,318.98 allegedly paid to a hospital for the decedent's care should be reduced by $530.75, which was contributed by the town; and a credit of $1,000 was taken as having been paid to the undertaker, when, in fact, the only amount paid by the administratrix to him was $272.14.

The judge made a report of the material facts found by him. No oral evidence was introduced, the findings of the judge being based entirely on documentary evidence which he incorporated in his report of material facts. The judge allowed the account as filed, specifically allocating "the $12,000 received in settlement to $3,500 for the pain and suffering, and $8,500 for the death." From the decree allowing the account, the town appealed. The administratrix moved to dismiss the appeal on the ground that the town was not a "person aggrieved" under G. L. c. 215, § 9. This motion was allowed and the town appealed. Both appeals are before us. We shall consider the second appeal first.

1. Since the town had taken the steps required by law to perfect the appeal, the judge was without authority to enter the decree dismissing it. The question whether the town was a person aggrieved by the decree allowing the account was for this court, not the Probate Court, to decide. This point is governed by *Harvey* v. *Waitt,* 312 Mass. 333, 335–336.

We are of opinion that the town was a "person aggrieved" with standing to appeal. General Laws c. 118A, § 4A (as amended through St. 1951, c. 801, § 5), makes the administratrix "liable in contract to any town for expenses incurred by it . . . for assistance rendered to such person under this chapter if . . . [the estate] is in possession of funds not otherwise exempted . . . . In no event, however, shall any action be brought under this section in behalf of a town except with the written approval of the department [of public welfare]." The judge found that "the town of

Westport had authority to proceed." The town was a creditor of the estate. Thus its pecuniary interest was affected by the decree allowing the account, and it was entitled to appeal as a "person aggrieved" under G. L. c. 215, § 9. See *Weston* v. *Fuller,* 297 Mass. 545, 547; *Dunbar* v. *Patrick,* 298 Mass. 29; Newhall, Settlement of Estates (4th ed.) § 292. Whether the amount allocated for conscious suffering (which, unlike the amount allocated for death, was an asset of the estate, *Beauvais* v. *Springfield Inst. for Sav.* 303 Mass. 136, 147) and the amounts shown as payments and charges in schedule B were correct were matters in which the town had direct financial interest, for they had an important bearing on what would be available in the estate to pay such judgment as the town might obtain. Both appeals are properly here.

2. In *O'Rourke* v. *Sullivan,* 309 Mass. 424, where an administrator received a lump sum settlement of a case involving death and conscious suffering, it was said that "the amount to be paid in settlement of each cause should be specifically designated," but when that was not done the Probate Court "has the power to deal with the sum obtained in settlement . . . so that justice may be done." P. 429. Thus, the judge below had the right to allocate the amount attributable to the conscious suffering count.

It remains to consider whether the allocation made was erroneous. The evidence relating to the accident and the suffering undergone by the decedent is very meager. This comes from answers of the administratrix to interrogatories propounded to her in the tort case and was as follows: The accident happened about 9 A.M. on a clear day. After the traffic light had changed in her favor, the decedent started to cross the street, and when she had reached the second lane of the highway she was struck by the front of the defendant's automobile, which had proceeded through a red light. There was no traffic obstruction which interfered with the decedent's view. The speed of the defendant's car was twenty-five to thirty miles per hour. The decedent sustained a brain injury, with "blood clots inside and outside of the brain," a broken pelvis, internal injuries,

and "multiple bruises and contusions all over her body." She "endured conscious suffering from the date of the accident, June 2, 1958, until the time of her death on June 27, 1958."

We cannot say, on the basis of the foregoing evidence, that the judge erred in allocating $3,500 for conscious suffering and $8,500 for death. No formula has ever been devised whereby a court can determine with any degree of certainty the monetary equivalent for conscious suffering. It is very largely a matter of judgment. Cases can be imagined where an award would be so large, on the one hand, or so small, on the other, that it could not stand as matter of law. But between these extremes there is much room for honest and reasonable difference of opinion. And the same may be said in estimating damages in a case for wrongful death, which must be assessed "with reference to the degree of . . . culpability" of the defendant. Since we are unable to say that the allocation was not within permissible limits, it must stand.

There are two matters concerning the account which require comment. (1) The funeral bill is listed in schedule B as $1,000. The town argues that it should be $272.14. It would appear that neither of these figures is correct. One of the exhibits is a letter from the undertaker to the town stating that the total bill for funeral expenses is $638.95 of which $272.14 remains unpaid. This statement was not contradicted. (2) In schedule B the sum of $1,318.98 is listed as having been paid to the Union Hospital in full payment of its bill. But the judge in his report of material facts found that the town contributed $530.75 toward the decedent's hospital bill. Thus, it would seem that this sum should be deducted from the amount stated in the account. The account should be corrected to show the proper amount actually incurred for funeral expenses and the amount of the hospital bill after deducting the amount contributed by the town. The decree dismissing the appeal is reversed. The decree allowing the account is to be modified as indicated, and, as so modified, is affirmed.

*So ordered.*